[Civ. No. 9637.   Third Dist.   Apr. 18, 1960.]

MODESTO PROPERTIES COMPANY (a Corporation), Appellant, v. STATE WATER RIGHTS BOARD, Respondent; CHARLES L. HARNEY, Real Party in Interest.

Gant & Gant and David G. Dunford for Appellant.

Stanley Mosk, Attorney General, Robert Burton, Deputy Attorney General and Gavin M. Craig, Chief Counsel, State Water Rights Board, for Respondent.

Hugh K. Landram and Louis V. Crowley for Real Party in Interest.

PEEK, J.—This is an appeal by Modesto Properties Company from an order of the trial court denying appellant's petition for a writ of mandate to revoke a permit previously issued by the State Water Rights Board to appropriate water from the Livingston drain which runs across the land of appellant and Charles Harney, the real party in interest.

The facts are essentially uncontroverted, and the case was submitted to the superior court on the record of the proceedings before the board. From such record it appears that the board granted Harney the permit on the theory that it had jurisdiction over all water in the state, and that even if its power were limited to waters flowing in natural channels, the drain had become natural in the eyes of the law. The drain was constructed in 1918 by the county of Merced across a tract of land then owned by the Bloss Land and Cattle Company, the predecessor in interest of both the appellant and Harney. The county acquired the easement to build in consideration of Bloss receiving the right to use any and all water found in the drain. Subsequently Bloss divided the tract, and the county conveyed the easement to the Merced Irrigation District. It is conceded that the drain serves to carry off waste and spill irrigation waters of the district, and that it is an artificial water channel.

The appellant contends that the court below erred (1) because the board has no power to issue permits unless the water flows in a natural channel, etc.; (2) that there is no evidence in the record to support the board's finding that the Livingston drain has become a natural channel; and (3) that even if the board has jurisdiction over the water in the drain, the permit should not have issued because there was no evidence that there was any unappropriated water. The court found as did the board as to the first and third items but made no finding as to the second.

The board contends, and the appellant does not controvert the fact, that in the past the board on numerous occasions has exercised jurisdiction over waters found in artificial channels including the Livingston drain. However it appears that this is the first time that jurisdiction of the board in such matters has been questioned. Although no reported case has been cited by either party wherein the power of the board in such matters has been questioned, nevertheless the water policy of this state, as well as the powers of the board are dealt with extensively in the Constitution and in legislative acts.

Article XIV, section 3, of the Constitution sets out the basic water policy in the following language:

"It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unrea-

sonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. . . . This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained.''

The appellant contends that the second sentence of this section limits the over-all policy of conservation and reasonable use of the state's water supply to those waters flowing in natural channels. The plain meaning of the words chosen, as well as the pronouncements of our Supreme Court, make this contention untenable. Thus the court in *Gin S. Chow* v. *City of Santa Barbara,* 217 Cal. 673 [22 P.2d 5], while quoting from the argument for the amendment submitted to the electorate, noted that the purpose of the amendment is '' 'to prevent the waste of waters of the state resulting from an interpretation of our law which permits them to flow unused, unrestrained and undiminished to the sea and,' [the amendment] is an effort 'on the part of the state, in the interest of the people of the state, to conserve our waters . . .' '' The court then concluded, ''That such purpose is reflected in the language of the amendment is beyond question.'' (P. 700.) In the later case of *Peabody* v. *City of Vallejo,* 2 Cal.2d 351, 367 [40 P.2d 486], the court held: ''The limitations and prohibitions of the constitutional amendment now apply to every water right and every method of diversion,'' and also the mandates of the amendment ''. . . apply to the use of all water, under whatever right the use may be enjoyed.'' (See also *City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908, 925 [207 P.2d 17], and *Fell* v. *M. & T. Incorporated,* 73 Cal.App.2d 692, 694 [166 P.2d 642].)

In the light of the broad interpretation given the amendment in the cases discussed above, we conclude that the fundamental policy of reasonable use and conservation set out in the Constitution is not limited solely to the water flowing in natural

streams, water courses, channels, etc., but that the policy encompasses the use of all of the water within the state.

Although article XIV, section 3, states that it is *self executing*, it is evident that if the policy therein stated was to be made truly effective, it required legislative implementation. Accordingly, the Legislature has passed a series of acts which presently comprise the Water Code. This code creates the Water Rights Board, and hence we must look to it in order to determine the scope of the jurisdiction granted to the board.

At the outset the constitutional amendment is repeated almost verbatim in section 100. Further it is stated that this ". . . division [dealing with the creation and powers of the board] is hereby declared to be in furtherance of the policy contained in Section 3 of Article XIV . . ." (§ 1050.) Thus it would seem proper to say that the Legislature did intend to devise a plan which was commensurate in scope with the constitutional amendment.

More specifically the board is given power to grant permits for ". . . any unappropriated water" (§ 1252), and the code defines unappropriated water to be any water which has never before been appropriated or, having been appropriated or used, flows back into a stream, lake or other body of water. (§ 1202.)  The term "appropriation" has been held to include ". . . any taking of water for other than riparian or overlying uses." (*City of Pasadena* v. *City of Alhambra, supra*, p. 925.) In that case the court further held: "In California surplus water may rightfully be appropriated on privately owned land for nonoverlying uses . . ." It is abundantly clear from this case, and from the sections of the Water Code enumerated above, that the Board's power is not restricted to water flowing solely in natural channels. However appellant contends that sections 102 and 1201 of that code do place a limitation on the board's jurisdiction.

Section 102 of the Water Code provides: "All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law." Patently there is no express limitation in the literal language of this section, and in fact it seems in accord with the interpretation of the Constitution discussed above. But appellant argues that this provision was based on former section 1410 of the Civil Code, which section limited the right to appropriation to waters

flowing in natural streams, etc. He then cites the code commissioners' notes on section 102 to the effect that the deletion of the language referring to natural streams, etc., was not intended to increase the water subject to appropriation. Therefore he concludes that the right of appropriation is limited to water flowing in a natural water course. We cannot adopt this argument. The appellant fails to note that the code commissioners also stated that since the adoption of article XIV, section 3, the section under discussion ''means what it says.'' (Deering's Ann. Wat. Code, p. 111.) It seems to us that these two pronouncements are conflicting, and we therefore take the position that the code commissioners' notes may not be relied upon to determine the legislative intent in this situation. This being the case, we believe it is more reasonable to construe the section according to its literal terms, and hence in conformity with the broad policy stated above. In other words, this section may not be construed to so limit the board's jurisdiction as to exclude artificial channels.

Section 1201 provides: ''All water flowing in any natural channel, excepting so far as it has been or is being applied to useful and beneficial purposes upon, or in so far as it is or may be reasonably needed for useful and beneficial purposes upon lands riparian thereto, or otherwise appropriated, is hereby declared to be public water of the State and subject to appropriation in accordance with the provisions of this code.'' Appellant stresses the words ''natural channel,'' and argues that the section should be read to mean that *only* waters in natural channels are subject to appropriation. It should be noted, however, that the word ''only'' is not used in the section, and it is equally reasonable to read the section to mean that waters subject to riparian rights may *also* be appropriated. In other words, we believe that the section should be construed as a direct limitation on the rights of riparian owners—a limitation to reasonable present and future needs—and not as a general limitation on the power of the board. Further, to adopt the appellant's argument would foster the waste of water in direct contravention of the mandate of the Constitution, as it would prevent the board from insuring that ''water resources of the State be put to beneficial use to the fullest extent of which they are capable.''

Since we hold that the Legislature has granted the board jurisdiction over artificial water courses, it is unnecessary to

discuss the alternate ground for the board's decision, i.e., that the Livingston drain has become a natural channel in the eyes of the law, and we need only consider the question of whether there was any unappropriated water in the drain.

It is the appellant's contention that there was no unappropriated water, because all water in the drain was vested by the contract which allowed Bloss the right to the use of any and all water found in the drain. There can be no doubt that the board has no power to grant a permit unless there is unappropriated water in the Livingston drain. (Wat. Code, § 1252.) From a review of the record it appears that the finding of the board that there was more water in the drain than appellant could reasonably use for overlying uses was amply supported. It is therefore clear that there was unappropriated water, and hence the board could grant a permit. (*City of Pasadena* v. *City of Alhambra, supra.*) In any event the permit of the board only affects unappropriated water and cannot, nor does it, purport to affect any prior or vested rights.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1960. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.