[Civ. No. 37089. First Dist., Div. Two. Jan. 23, 1976.]

THE PEOPLE ex rel. STATE WATER RESOURCES
CONTROL BOARD, Plaintiff and Appellant, v.
ALFRED F. FORNI et al., Defendants and Respondents.

**744**

## COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and Gregory K. Wilkinson, Deputy Attorneys General, for Plaintiff and Appellant.

P. A. Towner, Russell Kletzing, Verne L. Cline and Steven R. Cohen as Amici Curiae on behalf of Plaintiff and Appellant.

McDonough, Holland, Schwartz & Allen, Martin McDonough and Bruce McDonough for Defendants and Respondents.

## Opinion

**KANE, J.**—Plaintiff appeals from the trial court's judgment denying injunctive and/or declaratory relief.

On March 13, 1974, the State Water Resources Control Board ("Board") initiated this action to enjoin certain vineyardists in the Napa Valley from drawing water directly from the Napa River to their vineyards for frost protection. The complaint charges that the direct diversion of water during the frost period extending from March 15 through May 15 each year constitutes an' unreasonable method of diversion within the meaning of article XIV, section 3, of the California Constitution and section 100 of the Water Code.[1] This assertion is predicated upon allegations that the river flow during the frost season is insufficient to supply the instantaneous needs of all the vineyardists entitled to water. As a consequence, it is alleged, direct diversion during the frost season may at times dry up the river and deprive many of the vineyardists of water which they need to protect their vines from frost. Based upon similar allegations, the Board also sought redress by way of declaratory relief.[2]

---

[1]Unless otherwise indicated, all references will be made to the California Water Code.

[2]The pertinent portions of the complaint read as follows:

"(1) Wine production and the growing of grapes in Napa County is an economically important agricultural industry to Napa County and to the State of California:

"(2) A major problem in the production of wine grapes in the Napa River Valley is frost damage between the dates of March 15 and May 15 of each year:

"(3) The most effective method of protection against such frost damage is application of a fine spray of water from a sprinkler system:

"(4) Much of the existing sprinkler systems for such application use the Napa River as a direct source of water and the instantaneous demand for Napa River water for frost protection alone will in the near future far exceed the average flow of the Napa River for the months of March, April and May:

"(5) The *only feasible solution to this threatened shortage of Napa River water,* which shortage will, unless averted, affect and jeopardize a grape crop important not only to the public health, welfare and economic well-being of Napa County but of the entire State of California, *is (a) to require* forthwith *the winter storage of water for use for frost protection so that no direct pumping of Napa River water for such purpose would be necessary during an actual frost,* and (b) to develop, for future long-range use, other sources of water to supplement the Napa River."

"2. An actual controversy has arisen and now exists between the People and the defendants in that the *People* maintain and *assert that because of the high instantaneous demand for water of the Napa River* in Napa County *for frost protection and the inadequacy of the supply to satisfy the demand during the frost season after March 15 of each year* and in particular between March 15 and May 15 of this year, *diversion of water* from the Napa River *during said period for frost protection except to replenish water which had been stored in reservoirs* prior to March 15 *is an unreasonable use and an unreasonable method of use of water* within the meaning of Article 14, Section 3 of the California Constitution and Section 100 of the California Water Code. Defendants dispute this

On September 24, 1974, respondents filed a motion for summary judgment, claiming inter alia that they were riparian owners and that the Board had no authority to prohibit or limit their use of water. Treating the motion as one for judgment on the pleadings, the trial court granted the motion, holding in essence that the direct diversion of water from the Napa River for ·frost protection during the frost season was not unreasonable within the meaning of article XIV, section 3, of the Constitution and section 100. At the same time the trial court struck down section 659 of title 23 of the California Administrative Code (hereinafter "Regulation"), which declared that the direct diversion of water from the Napa River during the frost period was unreasonable. Judgment on the pleadings was entered on January 10, 1975, and the present appeal followed.

■ Under well settled law a motion for a judgment on the pleadings performs the function of a general demurrer and is to be treated in the same fashion on appeal. Accordingly, such motion admits the material facts alleged in the pleadings of the adverse party and the issues raised by it are legal and not factual (*Board of Regents* v. *Davis* (1975) 14 Cal.3d 33, 37 [120 Cal.Rptr. 407, 533 P.2d 1047]; *Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; *Hospital Council of Northern Cal.* v. *Superior Court* (1973) 30 Cal.App.3d 331, 337-338 [106 Cal.Rptr. 247]; *Silver* v. *Beverly Hills Nat. Bank* (1967) 253 Cal.App.2d 1000, 1005 [61 Cal.Rptr. 751]). The determinative issue on appeal, therefore, is whether appellant's complaint states facts sufficient to constitute a cause of action; or, to put it another way, whether the facts set out in the complaint justify the trial court's conclusion that the water use in question is reasonable as a matter of law. We entertain no doubt that when viewed in light of the applicable legal principles the factual allegations of the complaint do state valid causes of action for both injunctive and declaratory relief, and the contrary ruling of the trial court must be reversed.

As appears from the averments of the complaint, appellant's causes of action were primarily predicated on article XIV, section 3, of the

contention and threaten to use direct diversion of such Napa River water for frost protection during March 15 through May 15, of this year, 1974, and of future years.

"3. *The People seek a declaration at this time,* for reasons set out hereinabove, *that the diversion of water from the Napa River* in Napa County *during the frost season after March 15 of each year for frost protection, except to replenish water which had* [*been*] *stored in reservoirs prior to March 15, is an unreasonable use and an unreasonable method of use within the meaning of Article 14, Section 3 of the California Constitution and Section 100 of the Water Code.*" (Italics added.)

California Constitution, and section 100 of the Water Code. Article XIV, section 3, of the Constitution provided that "It is hereby declared that because of the conditions prevailing in this State *the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented,* and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. *The right to water* or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and *shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. Riparian rights in a stream or water course attach to, but to no more than so much of the flow thereof as may be required or used consistently with this section,* for the purposes for which such lands are, or may be made adaptable, *in view of such reasonable and beneficial uses;* provided, however, that nothing herein contained shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which his land is riparian under reasonable methods of diversion and use, or of depriving any appropriator of water to which he is lawfully entitled. This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."[3] (Italics added.)

■ The foregoing section by which the Constitution was amended in 1928 is construed by the cases as a rule of reasonable use "*to all water rights enjoyed or asserted in this state, whether the same be grounded on the riparian right* or the right, analogous to the riparian right, of the overlying land owner, or the percolating water right, *or the appropriative right.*" (*Peabody* v. *City of Vallejo* (1935) 2 Cal.2d 351, 383 [40 P.2d 486] (italics added); see also *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 138 [60 Cal.Rptr. 377, 429 P.2d 889]; *Gin S. Chow* v. *City of*

---

[3]Section 100 enacted in the implementation of the aforecited constitutional provisions similarly underscores that "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that *the conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water* or to the use or flow of water in or from any natural stream or watercourse in this State is and *shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right* does not and *shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water.*" (Italics added.)

*Santa Barbara* (1933) 217 Cal. 673, 703-705 [22 P.2d 5].) As epitomized in *Peabody*, the amendment declares that: (1) the right to the use of water is limited to such water as shall be reasonably required for the beneficial use to be served; (2) such right does not extend to the waste of water; (3) such right does not include unreasonable use or unreasonable method of use or unreasonable method of diversion of water; and (4) riparian rights attach to, but to no more than so much of the flow as may be used consistently with the foregoing principles (*Peabody v. City of Vallejo, supra,* at p. 367).

Thus, it seems evident that the overriding principle governing the use of water in California is that such use be reasonable. However, as repeated on innumerable occasions, what is reasonable use or reasonable method of use of water is a question of fact to be determined according to the circumstances in each particular case (*Joslin v. Marin Mun. Water Dist., supra,* at p. 139; *Gin S. Chow v. City of Santa Barbara, supra,* at p. 706). As the court put it in *Tulare Dist.* v. *Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 567 [45 P.2d 972], "What is a beneficial use, of course, depends upon the facts and circumstances of each case. *What may be a reasonable beneficial use, where water is present in excess of all needs, would not be a reasonable beneficial use in an area of great scarcity and great need. What is a beneficial use at one time may, because of changed conditions, become a waste of water at a later time.*" (Italics added.)

It is readily apparent that the claim that respondents' direct diversion of water constitutes an unreasonable use and an unreasonable method of use of water is predicated on the very premise that the direct pumping results in great temporary scarcity of water during the crucial frost period. Thus, as spelled out before, the complaint sets forth that the most effective way of protecting the young vine shoots against frost damage is the application of a fine spray of water from water sprinklers; that the diversion of water by direct pumping creates a high instantaneous demand for water which, in turn, depletes the river and makes the water supply inadequate during the frost period; that the threatened shortage which poses great hazard to the grape vineyards in Napa Valley can be prevented by building and utilizing winter storage or reservoirs which render the direct pumping of water unnecessary during the short duration of the actual frost. Based upon these factual allegations, appellant properly concludes that the direct diversion of water for frost protection in the crucial period constitutes an unreasonable use and an unreasonable method of use of water within the purview of the Constitution and the statutory provisions. Consequently, appellant's

complaint does state sufficient facts to constitute a cause of action for injunctive and/or declaratory relief and renders the judgment on the pleadings erroneous as a matter of law.

The aforestated salient reasons notwithstanding, respondents insist that appellant's complaint failed to state a cause of action and that the judgment on the pleading was properly granted by the trial court. In essence, it is contended that (1) respondents as riparian owners possess a primary right to use the river flow by direct diversion to beneficial use even if as a result no water is left for appropriation; (2) the Board has no authority to regulate or prohibit the exercise of riparian rights or to prescribe construction of storage facilities as a prerequisite to the exercise of such rights; and (3) the riparian right is a part of the land, a vested right of which the riparian owner cannot be deprived without just compensation. As shall appear below, respondents' arguments are lacking in merit and must therefore be rejected.

■ Addressing respondents' first contention, we concede that under the law prior to the 1928 constitutional amendment the riparian owner had a right to all the ordinary and natural river flow undiminished except by reasonable use of upper riparian owners (*Herminghaus* v. *South. California Edison Co.* (1926) 200 Cal. 81, 95 [252 P. 607]; 3 Witkin, Summary of Cal. Law (1973 ed.), § 581, p. 2247). However, as pointed out before, the effect of the passage of article XIV, section 3, of the Constitution was to modify the longstanding riparian doctrine and to apply by constitutional mandate the doctrine of reasonable use between the riparian owners and others, including appropriators (*Tulare Dist.* v. *Lindsay-Strathmore Dist., supra,* at p. 524). Likewise, the claim that respondents' use of water is beneficial does not bring it within the constitutional postulate of reasonableness. As emphasized in *Joslin,* "beneficial use" cannot be equated with "reasonable use," and "the mere fact that a use may be beneficial to a riparian's lands is not sufficient if the use is not also reasonable within the meaning of section 3 of article XIV . . ." (*Joslin* v. *Marin Mun. Water Dist., supra,* at p. 143).

■ Respondents' next contention that the Board infringed upon existing riparian rights by requiring construction of storage facilities also misses the point. As we have repeatedly underscored, the overriding constitutional consideration is to put the water resources of the state to a reasonable use and make them available for the constantly increasing needs of all the people. In order to attain this objective, the riparian owners may properly be required to endure some inconvenience or to

incur reasonable expenses (*Rancho Santa Margarita* v. *Vail* (1938) 11 Cal.2d 501, 561 [81 P.2d 533]; *Waterford I. Dist.* v. *Turlock I. Dist.* (1920) 50 Cal.App. 213 [194 P. 575]; *Peabody* v. *City of Vallejo, supra,* at p. 376). Whether the requirement of building water reservoirs in the case at bench is the only feasible method for achieving the constitutional mandate of reasonableness is manifestly a question of fact.

In light of our conclusion that the alleged unreasonable use and unreasonable method of use of water may be properly predicated upon the Constitution and the Water Code, the validity of Regulation, section 659, referred to in appellant's complaint, is not central to the adjudication of this case. Since, however, the trial court held that Regulation, section 659, is invalid and respondents insist on appeal that the ruling of the trial court is correct, we proceed to determine the effectiveness of that section.[4]

■ To begin with, we find no merit in respondents' assertion that the Board has exceeded its authority by declaring in section 659 that the direct diversion of water in the frost period constitutes an unreasonable method of use within the meaning of the Constitution and Water Code. Properly construed, section 659 amounts to no more than a policy statement which leaves the ultimate adjudication of reasonableness to the judiciary. Indeed, the initiation of the present action furnishes the best proof that appellant did not consider the regulation and the policy declaration therein binding as to respondent riparian owners, and submitted the issue for judicial determination.

■ We are likewise unable to construe section 659 as imposing upon the riparian owners a permit requirement as a precondition to the exercise of their riparian rights. Quite contrary to respondents' contention, section 659 explicitly provides that a permit is required only for the

---

[1] Regulation section 659, provides that "Because of the high instantaneous demand for water of the Napa River in Napa County for frost protection and the inadequacy of the supply to satisfy the demand during the frost season after March 15 in most years, diversion of water from the Napa River after March 15 for frost protection except to replenish water stored in reservoirs prior to March 15 is an unreasonable method of diversion within the meaning of Article 14, Section 3 of the California Constitution and Section 100 of the Water Code. No permits for the *appropriation* of water from the Napa River after March 15 of any year for frost protection shall be granted except to replenish winter storage and such permits shall not be granted until a water distribution program among the water users is established that will assure protection to prior rights. Regardless of the source of the water, the Board will retain jurisdiction to revise the terms and conditions of all permits issued for frost protection should future conditions warrant." (Italics added.)

*appropriation* of water (see fn. 4, *ante*). ▮ ▮▮▮ This, by definition, means that the only persons who are subject to the regulatory scheme are the appropriators,[5] not the riparian owners whose right to the use of water derives from their ownership of land rather than from any administrative authorization. Since the language of section 659 of the Regulation is clearly susceptible to a meaning which makes it valid, the trial court's holding to the contrary is unjustified and must be set aside (cf. *Jones-Hamilton Co.* v. *Franchise Tax Bd.* (1968) 268 Cal.App.2d 343, 349 [73 Cal.Rptr. 896]).

▮ Respondents' third contention as to the vested right theory deserves but short consideration. While correctly arguing that a vested property right cannot be taken without just compensation, respondents ignore the necessity of first establishing the legal existence of a compensable property interest. Such an interest consists in their right to the *reasonable* use of the flow of water. However, for the purposes of judgment on the pleadings, appellant adequately alleged that respondents' use of water was unreasonable. Moreover, there is a well recognized distinction between a "taking" or "damaging" for public use and the *regulation* of the use and enjoyment of a property right for the public benefit. The former falls within the realm of eminent domain, the latter within the sphere of the police power. It is established beyond dispute that the constitutional amendment in question is a legitimate exercise of the police power of the state, and that it purports only to regulate the use and enjoyment of a property right for the public benefit (*Gin S. Chow* v. *City of Santa Barbara, supra; Joslin* v. *Marin Mun. Water Dist., supra,* at p. 144). As a consequence, the vested right theory advanced by respondents has no applicability to the present case at all.

▮ Finally, we summarily reject the argument that the Board had no statutory authority to bring an action in which the reasonableness of respondents' water use could be adjudicated. Section 275 does confer such authority upon appellant Board by providing that *"The* department and *board shall take all appropriate* proceedings or *actions before* executive, legislative, or *judicial agencies to prevent* waste, *unreasonable use, unreasonable method of use, or unreasonable method of diversion of water* in this state." (Italics added.)

---

[5]An appropriator is one who takes water from the stream *not* under riparian right (3 Witkin, Summary of Cal. Law, *supra,* § 577, p. 2243). Riparian right is generally defined as the right which every person through whose land a natural watercourse runs has to the benefit of the stream as it passes through his land, for all useful purposes to which it may be applied (51 Cal.Jur.2d, Waters, § 66, p. 531).

In conclusion, we wish to make it unmistakably clear that all we hold today is that appellant's complaint states valid causes of action for either injunctive or declaratory relief or both, and that the question of reasonable use or reasonable method of use of water constitutes a factual issue which cannot be properly resolved by a motion for judgment on the pleadings.

The judgment is reversed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied February 20, 1976, and respondents' petition for a hearing by the Supreme Court was denied March 31, 1976.