[No. D003158. Fourth Dist., Div. One. Nov. 4, 1986.]

IMPERIAL IRRIGATION DISTRICT, Plaintiff and Respondent, v.
STATE WATER RESOURCES CONTROL BOARD,
Defendant and Appellant;
ENVIRONMENTAL DEFENSE FUND, INC., Intervener and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Roderick Walston and M. Anne Jennings, Deputy Attorneys General, for Defendant and Appellant.

Jennings, Engstrand & Henrikson, Paul D. Engstrand, Urban J. Schreiner, Gregory V. Moser, Horton, Knox, Carter & Foote, Reginald L. Knox, Jr., and John P. Carter for Plaintiff and Respondent.

Thomas J. Graff, John W. Krautkraemer, Jeffrey H. Silberman and Mulvaney & Kahan for Intervener and Appellant.

**OPINION**

**LEWIS, J.**—In its action for declaratory relief the Imperial Irrigation District (IID) prevailed against the State Water Resources Control Board (Board) and intervener Environmental Defense Fund, Inc. (EDF), when the trial court declared nonbinding on IID a June 21, 1984, adjudicatory decision by the Board that IID's "failure to implement additional water conservation measures at this time is unreasonable and constitutes a misuse of water under Article X, Section 2 of the California Constitution and Section 100 of the California Water Code." Contending the Board had adjudicatory power to make such a finding of unreasonable use of water by IID, the Board and EDF appeal the trial court's judgment which was based on the view that the statutory scheme does not authorize the Board to adjudicate the matter of unreasonable use and that the Board's remedy is prescribed by Water Code section 275,[1] i.e., to refer the matter to the Attorney General

---

[1]All statutory references are to the Water Code unless otherwise specified.

for legal proceedings before the superior court. Holding that the Board has adjudicatory power in the matter of unreasonable use of water, we reverse.

## I

This matter had its origins in 1980 when John Elmore, a farmer with acreage adjacent to the Salton Sea, requested the Department of Water Resources (DWR) to investigate alleged misuse of water by IID in the form of losses due to canal spills and excess tailwater running from the fields of IID's customers. (See *Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 189 [205 Cal.Rptr. 433].) DWR concluded IID wastes and misuses substantial quantities of water. Elmore also requested a hearing from the Board (leading to the determination here in question), brought suit for damages and injunctive relief and petitioned for a writ of mandamus seeking adjudication of allegations IID violated its duty by wasting and misusing water and by flooding Elmore's land and destroying existing drainage on his land.[2] After completing its investigation and report, DWR referred the matter to the Board which conducted hearings concerning alleged waste and unreasonable use of water by IID. The hearings on six dates in September and December 1983 culminated in the Board's 71-page Decision 1600 on June 21, 1984. After making the finding IID's failure to implement additional water conservation measures is unreasonable and a misuse of water under the California Constitution, article X, section 2, the Board ordered IID to undertake various conservation measures.[3] IID's request for reconsideration of Decision 1600 on the ground all water IID diverts from the Colorado River[4] is put to beneficial use and no alternate beneficial use for the water presently exists was denied by the Board on September 20, 1984.

---

[2] After a demurrer to the writ petition was sustained without leave to amend, Elmore appealed to this court which reversed. One of IID's arguments on the appeal was that the Board had exclusive jurisdiction of the issues and Elmore thus had not exhausted his administrative remedies. This court held the superior court had concurrent original jurisdiction with the Board, thus defeating IID's argument which was inconsistent with the view it takes in this case. (See *Elmore* v. *Imperial Irrigation Dist.*, *supra*, 159 Cal.App.3d 185, 192-193.) Elmore and IID settled that case before the trial court heard this case.

[3] IID is a public agency formed under the Irrigation District Law. (§ 20500 et seq.) The parties stipulate IID is authorized to adopt a water conservation program for the purpose of conserving the water supplies available to it. (§ 375.)

[4] Although the legal relationships involving IID and its Colorado River water source are complex, the Board informs us, without dispute, that IID has pre-1914 appropriative rights dating from 1901, antedating the permit system established in Part 2 (commencing with § 1200 of Div. 2). IID was adjudicated to have state-perfected appropriative rights to the lesser of 2.6 million acre feet or the quantity reasonably needed to supply consumptive and related uses on 424,125 acres. (*Arizona* v. *California* (1979) 439 U.S. 419, 429 [58 L.Ed.2d 627, 633, 99 S.Ct. 995]; *Bryant* v. *Yellen* (1980) 447 U.S. 352, 364-365, 371-372 [65 L.Ed.2d 184, 194-195, 199-200, 100 S.Ct. 2232].)

This declaratory relief action followed with the trial court concluding:

"1. The provisions of article X, section 2 of the California Constitution are applicable to the [IID].

"2. The [Board] had authority to conduct an administrative hearing on the reasonableness of the [IID's] water management practices and to make an administrative determination thereon.

"3. The factual statements, conclusions and legal opinions expressed in Decision 1600, including the conclusion therein that the operational practices of [IID] violate article X, section 2 of the California Constitution, shall not have any binding effect in any other action or proceeding.

"4. The orders contained in Decision 1600 are without binding effect on [IID]. The [Board] may initiate an action authorized by law in accordance with the provisions of section 275 challenging the operational practices of IID which may be subject to section 275. In any such action [IID] shall be entitled to a full trial de novo."

## II

Article X, section 2 of the Constitution and section 100 declare the general welfare requires the state's water resources be put to beneficial use to the fullest extent of which they are capable and the waste or unreasonable use of water be prevented. The constitutional provision declares: "This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."[5]

---

[5]Article X, section 2 of the Constitution reads: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. Riparian rights in a stream or water course attach to, but to no more than so much of the flow thereof as may be required or used consistently with this section, for the purposes for which such lands are, or may be made adaptable, in view of such reasonable and beneficial uses; provided, however, that *nothing* herein contained shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which the owner's land is riparian under reasonable methods of diversion and use, or as depriving any appropriator of water to which the appropriator is lawfully entitled. This section shall be self-executing, and the Legislature

Section 5 of article X of the Constitution, relating to appropriated water use such as IID's, declares all such use to be a public use "subject to the regulation and control of the State, in the manner to be prescribed by law."[6]

With respect to adjudicatory power of the Board, the Legislature has declared the Board "shall exercise the adjudicatory and regulatory functions of the state in the field of water resources." (§ 174.) To this end the Legislature expressly has provided for adjudicatory functions of the Board in certain areas such as whether water is appropriated (§ 1051) and whether particular action or inaction by regional water quality control boards under the Portor-Cologne Water Quality Control Act (§ 13000 et seq.) is proper (see, e.g., §§ 13320, 13324).[7] In other areas having to do with water resources, however, the Legislature has not specifically granted adjudicatory authority to the Board with reference to particular areas of water resource concern.

The Supreme Court, considering an area of Board adjudicatory endeavor expressly provided for by statute, that of waste water reclamation (see, e.g., § 13324) in a background of appropriative rights under permit from the Board, has said "[t]he statutes vest the [Board] with *full authority to 'exercise the adjudicatory* and regulatory *functions* of the state *in the field of water resources.'*" (*Environmental Defense Fund, Inc.* v. *East Bay Mun. Utility Dist.* (1977) 20 Cal.3d 327,[8] 342 [142 Cal.Rptr. 904, 572 P.2d 1128], quoting § 174, italics added.) More fully, *EDF I* states: "The Legislature, consistent with its authority under article XIV, section 3 [now art. X, § 2], has established a thorough statutory system insuring reasonable water allocation and safeguarding water purity, commensurate in scope with the

---

may also enact laws in the furtherance of the policy in this section contained."

Section 100 provides: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or watercourse in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water."

[6]Article X, section 5 of the Constitution reads: "The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law."

[7]Such decisions are subject to judicial review by way of mandate. (See, e.g., §§ 13325, 13330; *Bank of America* v. *State Water Resources Control Bd.* (1974) 42 Cal.App.3d 198 [116 Cal.Rptr. 770].)

[8]Here referred to as *EDF I.*

constitutional provision. [Citation.] The statutes vest the [Board] with full authority to 'exercise the adjudicatory and regulatory functions of the state in the field of water resources.' [Citations.] It has been granted broad authority to control and condition water use, insuring utilization consistent with public interest. [Citation.] This authority includes protection of the environment. [Citation.] The [Board's] powers extend to regulation of water quality and prevention of waste. [Citation.] It has adopted administrative regulations to prevent waste and unreasonable use. [Citation.]" (*EDF I, supra,* 20 Cal.3d at pp. 341-342.)

*EDF I* makes this statement in the context of its holding that the Board had exclusive adjudicatory jurisdiction in the matter of proceedings to compel water agencies to reclaim waste water. (*EDF I, supra,* 20 Cal.3d 327, 341 et seq.) In reaching its conclusion, *EDF I* describes the administrative system established by the Legislature to guarantee reasonable water use and purity as "comprehensive" (*EDF I, supra,* 20 Cal.3d at pp. 343-344) and observes: "The scope and technical complexity of issues concerning water resource management are unequalled by virtually any other type of activity presented to the courts. What constitutes reasonable water use is dependent upon not only the entire circumstances presented but varies as the current situation changes. As this court noted in *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 140 . . ., 'what is a reasonable use of water depends on the circumstances of each case, such an inquiry cannot be resolved *in vacuo* from statewide considerations of transcendent importance.'

". . . . . . . . . . . . . . . . . . . . . . . .

"When as in the instant case the statutory pattern regulating a subject matter integrates the administrative agency into the regulatory scheme and the subject of the litigation demands a high level of expertise within the agency's special competence, we are satisfied that the litigation in the first instance must be addressed to the agency. [Citation.]" (*EDF I, supra,* 20 Cal.3d at p. 344.)

In another area of water resources concern, that of competing uses by all the holders of riparian rights in a stream system,[9] the court further clarified the adjudicatory authority of the Board vis-à-vis the courts in enforcing article X, section 2, by holding "prior court adjudications in original proceedings between some users would not be res judicata in the later admin-

---

[9]For a summary of the California water rights system which involves both the doctrine of appropriation and riparian rights, see *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 441-443 [189 Cal.Rptr. 346, 658 P.2d 709]. (See also *People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-309 [162 Cal.Rptr. 30, 605 P.2d 859].)

istrative proceeding and that the latter proceeding would result in a final and comprehensive determination of user rights 'in light of what constitutes a reasonable beneficial use under article X, section 2.' (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 359-360 . . . .)" (*Environmental Defense Fund, Inc.* v. *East Bay Mun. Utility Dist.* (1980) 26 Cal.3d 183,[10] 199.) It has since been pointed out that although denying res judicata effect to prior private litigation, *Waters of Long Valley* "expressly recognized that superior courts have adjudicated claims between riparian owners [citation], and nothing in the opinion suggests that traditional court enforcement is to be abandoned." (*EDF II, supra,* 26 Cal.3d 183, 199-200.) *EDF II* also makes the point that in *Waters of Long Valley,* "[t]his court emphasized that private judicial litigation involves piecemeal adjudication determining only the relative rights of the parties before the court, whereas *in administrative proceedings comprehensive adjudication considers the interests of other concerned persons who may not be parties to the court action.* [Citation.]" (*EDF II, supra,* at p. 199, italics added.)

*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348-349, 351-353 [158 Cal.Rptr. 350, 599 P.2d 656], relies on the statutory adjudication procedure set forth in section 2500 et seq., as well as article X, section 2, in concluding the Board is authorized in such statutory adjudication proceedings to determine the nature of future riparian rights.

*EDF II, supra,* 26 Cal.3d 183, dealt with a matter not involving express statutory adjudicatory authority of the Board, the question of whether a water diversion at one particular location rather than another constitutes an unreasonable method of diversion under article X, section 2. The background in *EDF II,* of course, was the same as in *EDF I,* appropriative rights under permit from the Board. *EDF II* holds both the courts and the Board possess concurrent jurisdiction of the reasonable diversion question. In doing so, *EDF II* relies on much of what was said in *EDF I* as to the Boards' adjudicatory authority, stating in part: "[T]he Legislature completed the comprehensive scheme for administrating appropriative rights by empowering the board to see to it that the rights, once granted, would not be misused to the detriment of the people of the state. Both permits and licenses are made subject to partial or total revocation if the water is not placed to beneficial use in accordance with their terms and conditions and in accordance with division 2 of the Water Code. [Citation.] Division 2 contains the policy mandates governing actions by the board in approving and administering appropriative rights. Hearing requirements and *judicial review pro-*

---

[10]Here referred to as *EDF II.*

*cedures are established to assure that board action under these sections properly balances the rights of the appropriator with the needs of the public.* [Citation.]

"In summary and in the words of *Modesto Properties Co.* v. *State Water Rights Bd.* (1960) 179 Cal.App.2d 856, 860 . . ., the Legislature devised 'a plan which was commensurate in scope with the constitutional amendment [art. X, § 2],' and delegated to the board by the Water Commission Act the authority to protect the public interest not only in the issuance of appropriative permits and licenses but also in their later administration. As pointed out in our earlier decision in this case (20 Cal.3d at p. 342), the board 'has been granted broad authority to control and condition water use, insuring utilization consistent with public interest. [Citation.] This authority includes protection of the environment. [Citation.] The [Board's] powers extend to regulation of water quality and prevention of waste. [Citation.] It has adopted administrative regulations to prevent waste and unreasonable use.'" (*EDF II, supra,* 26 Cal.3d at p. 198.)

*EDF II* squarely states "[t]he board's duties and responsibilities over appropriative rights include insuring that they meet the mandate of article X, section 2. (Wat. Code, § 1050.)[11]" (*EDF II, supra,* 26 Cal.3d at p. 195.)

A more recent Supreme Court decision from which we take some guidance is *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419,[12] 443, which, referring to article X, section 2, instructs: "*All* uses of water . . . must now conform to the standard of reasonable use." (Italics added.)

*National Audubon* holds that under section 2501,[13] contained in the statutory adjudication procedure set forth in Chapter 3 (commencing with § 2500) of Part 3 of Division 2, the Board is authorized to determine the allocation of water in a stream system, a determination which may include reconsideration of appropriative rights previously granted in that system (33

---

[11]Section 1050 reads: "This division is hereby declared to be in furtherance of the policy contained in Section 2 of Article X of the California Constitution and in all respects for the welfare and benefit of the people of the state, for the improvement of their prosperity and their living conditions, and the board and the department shall be regarded as performing a governmental function in carrying out the provisions of this division."

[12]*National Audubon* did not involve a charge of unreasonable use under article X, section 2, but rather a claim that use of water is harmful to interests protected by the public trust. (33 Cal.3d at pp. 448, 449.)

[13]Section 2501 reads: "The board may determine, in the proceedings provided for in this chapter, all rights to water of a stream system whether based upon appropriation, riparian right, or other basis of right."

Cal.3d at p. 449), but that, based on the statutes providing for a reference to the Board (§ 2000 et seq.[14]), the superior court also has concurrent original jurisdiction. (33 Cal.3d at p. 449.) *National Audubon* states: "In recent decisions, however, we have discerned a legislative intent to grant the Water Board a '*broad,*' '*open-ended,*' '*expansive*' authority to undertake *comprehensive* planning and allocation of water resources. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348-349, 350, fn. 5 . . .; *People* v. *Shirokow, supra,* 26 Cal.3d 301, 309.) Both *cases emphasized the board's power to adjudicate all competing claims,* even riparian claims [*Waters of Long Valley*] and prescriptive claims (*Shirokow*) *which do not fall within the appropriative licensing system.* Having construed section 2501 to give the board broad substantive powers—powers adequate to carry out the legislative mandate of comprehensive protection of water resources—it would be inconsistent to read that statute so narrowly that the board lacked jurisdiction to employ those powers." (33 Cal.3d at p. 449, italics added.)

■ In the light of these constitutional, statutory and Supreme Court authorities which apparently establish all-encompassing adjudicatory authority in the Board on matters of water resource management, how could the trial court have found an absence of such authority in the matter of unreasonable water use under article X, section 2? The answer IID proposes, basically, is that section 275 operates as a limitation on the Board's adjudicatory authority. Section 275 reads: "The department and *board shall take all appropriate proceedings or actions before* executive, legislative, or *judicial agencies to prevent waste, unreasonable use,* unreasonable method of use, or unreasonable method of diversion *of water in this state.*" (Italics added.)

No case has construed section 275 as a limitation on the Board's adjudicatory power. In fact, *EDF I,* which holds the Board had *exclusive* adjudicatory jurisdiction over the matter of waste water reclamation in the context of appropriative rights, cites section 275 in support of its conclusion the Board's "powers extend to regulation of water quality and prevention of waste." (*EDF I, supra,* 20 Cal.3d 327, 342.) This cannot reasonably be viewed as a construction of the statute in a limiting manner. Rather, it shows the Supreme Court's view of the statute as conferring on the Board one of its many available tools for use in water resource management.

A case decided since the trial court's hearing in this matter correctly cites section 275 when viewed together with article X, section 2, and section

---

[14]Section 2000 reads: "In any suit brought in any court of competent jurisdiction in this State for determination of rights to water, the court may order a reference to the board, as referee, of any or all issues involved in the suit."

1050, as authority for the proposition the Board has "the *separate and additional power* to take whatever steps are necessary to prevent unreasonable use or methods of diversion." (*United States* v. *State Water Resources Control Bd.* (1986) 182 Cal.App.3d 82, 142 [227 Cal.Rptr. 161].) This view, too, demonstrates that section 275 is not to be construed as a limitation on the Board's adjudicatory authority, but rather as a statute granting separate, additional power to the Board.

This view of section 275, which we adopt, eliminates IID's basic argument in support of the judgment.

IID's other arguments carry no persuasive weight when considered in the context of the authorities we have set forth. ■ Neither the fact that IID is a local agency authorized by statute (§ 20500 et seq.) nor that it is authorized to undertake water conservation programs (§ 375) leads to a different conclusion under the authorities. Whether IID is an urban water supplier providing water for municipal purposes (§ 10617) and thus is required to prepare and adopt an urban water management plan .(§ 10620) under the Urban Water Management Planning Act (§ 10610 et seq.) is not shown by the record. Even if IID were found to come within the Urban Water Management Planning Act, we are of the view its compliance activities in the form of planning would not insulate it from concurrent Board adjudicatory authority in the matter of unreasonable use even to the extent of ordering it to submit a plan to conserve water as was done here. (See §§ 10650, 10651, 10653.) ■ Nor is it of any aid in the resolution of the adjudicatory authority issue to discuss alleged or actual inconsistencies in the positions the parties have taken, or to place any exclusive remedy significance upon regulations referring to the Board's ability to request legal action by the Attorney General on matters involving noncompliance with Board orders. (See Cal. Admin. Code, tit. 23, §§ 764.13 and 4006.) The adjudicatory function performed by the Board in this case is far different in nature and effect from the adoption of a regulation declaring unreasonable the diversion of water from a particular river during a specified season which was involved in *People* ex rel. *State Water Resources Control Bd.* v. *Forni* (1976) 54 Cal.App.3d 743 [126 Cal.Rptr. 851]. Thus, *Forni*'s characterization of the regulation as no more than a policy statement subject to adjudication of reasonableness by the judiciary (54 Cal.App.3d at p. 752[15])

---

[15]"Properly construed, [the regulation] amounts to no more than a policy statement which leaves the ultimate adjudication of reasonableness to the judiciary. Indeed, the initiation of the present action furnishes the best proof that appellant did not consider the regulation and the policy declaration therein binding as to respondent riparian owners, and submitted the issue for judicial determination." (*People* ex rel. *State Water Resources Control Bd.* v. *Forni, supra,* 54 Cal.App.3d 743, 752.)

has no bearing on this case. *Forni* is of no aid to IID. Moreover, we cannot accept IID's position that *Elmore* v. *Imperial Irrigation Dist., supra,* 159 Cal.App.3d 185 "fully supports the position of IID." Reversing a judgment after IID's demurrer to Elmore's petition for writ of mandate was sustained without leave to amend, this court clearly noted the Board's concurrent jurisdiction with the courts in the matter of unreasonable water use alleged (*id.* at p. 192), stated in terms of the sufficiency of Elmore's writ petition that "IID has a clear, mandatory duty to avoid wasting water, prevent flooding and provide drainage [quoting article X, section 2, and citing § 100]" (*id.* at p. 193[16]), and directed the court to consider the very decision of the Board here in question and make use of the Board's expertise in determining the petition. (*Id.* at p. 199.) Finally, we have adequately answered IID's other arguments under the heading the law does not support implied powers for the Board.

 Accordingly, we hold in this case involving IID's use of water under appropriative rights that the Board's authority includes the power to adjudicate the article X, section 2, issue of unreasonable use of water by IID. A corollary of this conclusion is that review of the Board's decision must be by way of writ, not trial de novo, in the superior court.[17]

Judgment reversed.

Work, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied December 2, 1986, and respondent's petition for review by the Supreme Court was denied January 21, 1987.

---

[16]See also *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 939-940 [218 Cal.Rptr. 839].

[17]The Board concedes that in this case, the independent judgment test should be applied by the trial court. (See § 1840, subd. (c).)