[Civ. No. 26084. Second Dist., Div. Two. Nov. 14, 1962.]

JAMES THORNTON et al., Plaintiffs and Respondents, v. MARTHA JEAN LUCE et al., Defendants and Appellants; VIC KASSARJIAN et al., Defendants and Respondents; IMPERIAL CASUALTY & INDEMNITY CO., Intervener and Respondent.

[Civ. No. 26085. Second Dist., Div. Two. Nov. 14, 1962.]

ROY SHAW, Plaintiff and Respondent, v. MARTHA JEAN LUCE et al., Defendants and Appellants.

(Consolidated Cases.)

---

*Formerly Rules on Appeal, rule 17(b).
†Assigned by Chairman of Judicial Council.

Thomas P. Menzies, James O. White, Jr., and Spray, Gould & Bowers for Defendants and Appellants.

Manasse & Weissburg and Herbert Manasse for Plaintiffs for Respondents in Civ. No. 26084.

Fahrney & Tipton for Plaintiff and Respondent in Civ. No. 26085.

Hunter & Liljestrom, Clark Mangum Hunter, Betts, Ely & Loomis and Ingall W. Bull, Jr., for Defendants and Respondents.

No appearance for Intervener and Respondent.

HERNDON, J.—Although there are numerous parties and somewhat complex factual situations presented herein for our review, the legal issues are few and relatively clear. Two actions stemming from the same multi-party traffic accident were consolidated for purposes of trial. We shall refer to them as the *"Shaw"* case and the *"Thornton"* case.

Appellants Martha Jean Luce and Richard B. Luce, who were named as defendants in both cases and were the only defendants named in the *Shaw* case, appeal from the consolidated judgment and particularly specify that their appeal is from the ''judgments'' contained therein in favor of the plaintiffs in both cases and in favor of certain named codefendants in the *Thornton* case. This appeal will be referred to as the ''Luce'' appeal.

Appellants Joseph Holowaty, Peter Figol and Edmonton Wholesale Fruit and Produce Co., not being involved in the *Shaw* case, appeal from the judgment entered in favor of the plaintiffs, and certain codefendants, in the *Thornton* case. This appeal will be designated the ''Holowaty'' appeal.

The evidence, though somewhat conflicting, may be summarized as follows. On December 12, 1958, appellant Martha Luce was driving an automobile owned by her husband (also an appellant herein) easterly on Ventura Boulevard in Los Angeles, California. At the time of the accident, she was attempting to make a left turn into the driveway of Vic's Automotive Shop, said driveway being located in the middle of the block. She had picked up her car from Vic's Automotive Shop earlier in the day after the operators there had completed installation of a transmission that had been rebuilt by Valley Transmission. She had driven some 50 miles and noticed that this newly installed transmission was slipping, and, due to this defect she desired to return the car.

Ventura Boulevard at the scene of the accident consisted of three lanes of traffic in each direction. The evidence was conflicting as to the exact point on the street from which Mrs. Luce began her left turn, as to the speed of her car before

and during the turn, and as to whether or not she had stopped before making the turn. However, it is undisputed that she turned at a time when there was a ''wall of traffic'' approaching from the opposite direction some 300 to 360 feet distant, i.e., there was at least one approaching vehicle in each of the oncoming lanes. She managed to clear the first lane without incident, but the vehicles in the second, or middle lane, were forced to brake abruptly in order to avoid striking her. In the third, or curb, lane she was struck by an automobile operated by plaintiff and respondent Roy Shaw. Mr. Shaw sustained injuries for which he was awarded compensation by the judgment against appellants Luce which is here presented for review.

The first two cars in the middle lane succeeded in stopping, as did the third vehicle, a truck operated by respondent Thornton and in which respondent Schofield was a passenger. However, in order to avoid hitting Mrs. Luce, it was necessary for Mr. Thornton to lock his brakes. His truck slid some 90 feet before coming to a halt only 2 feet behind the car in front of him. Thornton had only enough time to release his foot brake and disengage the truck's gears before his truck was struck from the rear by a heavily laden truck operated by appellant Holowaty. Thornton and Schofield sustained the injuries for which they sought to recover in this action against the Luces, Holowaty, the owners of the truck operated by him, and also against the owners of Vic's Automotive Shop and Valley Transmission. Imperial Casualty & Indemnity Company also filed as plaintiff in intervention against the same defendants to recover by way of subrogation the moneys it had paid as insurance carriers of the owners of the Thornton truck. Upon instructions by the court, the action was dismissed as against Vic's Automotive Shop and Valley Transmission. The jury returned a verdict in plaintiffs' favor against the Luces, Holowaty, and the owners of his truck.

As heretofore indicated, the Holowaty appeal is taken only from the judgment in the *Thornton* case, whereas the Luces are appealing from the combined judgments in both cases. We consider it expedient first to eliminate certain of the assignments of error urged only by the Luces and which clearly are without merit.

Appellants Luce assert that it was error to refuse their motions for a directed verdict and for judgment notwithstanding the verdict. Since Mrs. Luce admitted that she knew of the condition of her transmission which impeded proper

acceleration (although she claimed it had not been quite so dramatic in its earlier failures), no claim is made that she was free from negligence. Her only argument is that in the *Thornton* case, unlike the *Shaw* case, there was an intervening agency whose negligence was not foreseeable and hence her negligence was, as a matter of law, not the proximate cause of the Thornton accident.

Questions of foreseeability and proximate cause are for the jury, and where there is any evidence to support the jury's finding, an appellate court will not reweigh this evidence. (*Jones* v. *City of South San Francisco,* 96 Cal.App.2d 427, 435 [216 P.2d 25] ; *Richardson* v. *Ham,* 44 Cal.2d 772, 775-777 [285 P.2d 269].) It is a matter of common knowledge that where one car in a stream of cars is forced to come to a sudden halt, there is a clear and foreseeable danger that following vehicles will fail to effect a complete stop in time to avoid a collision. The fact that this may be due to the negligence of the operators of following vehicles in no way alters the foreseeability of the risk created. Such negligence, if any, would not be extraordinary but merely would contribute concurrently with the negligence of the party whose conduct brought about the initial abrupt stop. (*Stewart* v. *Cox,* 55 Cal.2d 857, 864 [13 Cal.Rptr. 521, 362 P.2d 345].)

As indicated, the negligence of Mrs. Luce in voluntarily placing herself in a position of peril is conceded, so that nothing would be added by an extended comment upon the evidence. In all particulars, it was ample to justify the trial judge in submitting the question to the jury and thereafter allowing their determination to stand.

The Luces next assert that the trial court erred in allowing hypothetical questions to be put to an expert witness regarding the time required to traverse a given distance at a given speed or with a given rate of acceleration. Actually, the witness was asked such hypothetical questions based upon all speeds or rates of acceleration that the jury might, from the evidence, conceivably have found to have been involved. Hence, appellants cannot be heard to complain that such speeds or rates were different from those testified to by appellants or other witnesses. Complaint also is made that the court in its instructions assumed the existence of a fact not in evidence, or concerning which there was a conflict, when it stated that the Thornton truck came to a "sudden stop." Not only was there evidence of this fact, but there was no evidence whatsoever in conflict with it.

Finally, it is argued that it was error for the court

to state to the jury, "You will have to conclude from the conflict in the evidence at what point this turn was undertaken, whether it was approximately at a right angle to this alleyway, or whether it was 25 feet further to the west or 50 feet further to the west, *or whatever figure was given it by the different witnesses.*" (Emphasis added.) The Luce appellants assert that no witness testified that the turn was 50 feet west of the alleyway. Even if this were true, it would be immaterial, for it is patent from the very language of the instruction that the court was not indicating its opinion as to the distance involved and was not even asserting that any witness testified to any particular distance. It clearly was left to the jury first to determine what figures were given by the different witnesses and then which of those figures it found most probable.

The last separate assignment argued by the Luce appellants is that it was error to strike certain testimony contained in a deposition. During the taking of the deposition of respondent Thornton, the attorney who was examining him held a stop watch while Thornton estimated the time between the completion of his stop and his being struck by the Holowaty truck. Although the deposition is not before us, it appears from the reporter's transcript that the attorney asked Thornton: "Q. You want to count off how long it took, if you can? I have a sweep second hand." Thornton apparently referring to a remark made at the time and to which he also testified in court, said: "A. 'Well, Abner, we missed them.' (Indicating.) Bang right there." The attorney then apparently stated: "Q. It is about 45 seconds." Apparently no reply from the witness was given or expected, for the attorney immediately asked another question.

Thornton testified at the trial that the time involved was four or five seconds, and both he and his attorney stated that the same estimate had been given in the deposition, but that the reporter in transcribing his notes had inadvertently turned "four or five" into "forty-five." The deposition, however, had been filed without correction. The court at this point struck the testimony on the ground that it was that of the attorney holding the watch and not that of the witness, and therefore, was not proper impeachment, regardless of the reporter's accuracy. This appears perfectly reasonable. If the attorney who took the deposition had wished to testify at the trial, he could have done so and, therefore, even assuming that Thornton might have corrected the reported statement of another person, no possible prejudice to appellants could have resulted.

We turn now to the two assignments of error, made in both the Luce appeal and the Holowaty appeal, which involve the only serious questions before us. The first is that these appellants were prejudiced by the dismissal granted to the codefendants referred to herein as Vic's Automotive Shop and Valley Transmission. It is appellants' contention that since the adoption of sections 875 et seq. of the Code of Civil Procedure, relating to the contribution between joint tortfeasor judgment debtors, each codefendant alleged to be a possible joint tortfeasor has been given the right in some fashion to associate himself with the plaintiff against the other such codefendants and assert the rights of the plaintiff regarding the determinations of the court, whether the plaintiff elects to do so or not.

We consider his contention to be wholly without merit, both by reason of the language of the code sections cited and because of the effect of the decisions which to date have interpreted such sections. The same result flows from the practical considerations which must be recognized in the orderly conduct of contested trials in which numerous parties are asserting many diverse and conflicting rights.

Appellants necessarily concede that prior to the enactment of sections 875 et seq., the rule in California, as at common law, was that one tortfeasor could not obtain contribution from another. (*Augustus* v. *Bean,* 56 Cal.2d 270, 271 [14 Cal.Rptr. 641, 363 P.2d 873].) ''Where this section [Code Civ. Proc., § 875] is not applicable, however, the general common law prevails and the party seeking contribution must bring himself within one of the exceptions to the rule.'' (*American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520, 523 [21 Cal.Rptr. 33].)

Appellants do not assert that by any affirmative pleading on their own part were the codefendants (who were subsequently dismissed) brought into the action, nor that they would have had any right to bring them in upon motion by way of cross-complaint or otherwise. Of course, they do not assert that any rights they might have, or might have acquired, against such codefendants were by way of indemnity or any other of the exceptions to the common-law rule. (Cf. *City & County of San Francisco* v. *Ho Sing,* 51 Cal.2d 127, 130 [330 P.2d 802].) Such an assertion obviously would be without merit here, for the right of contribution, where it exists under the new statutory provisions, presupposes a *common liability* which is shared by joint tortfeasors on a pro rata basis, whereas the right of indemnity, because of some

special relationship existing between the tortfeasors shifts the *entire* loss upon the one bound to indemnify. (*Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 75 [4 Cal. Rptr. 379].)

What, then, is the right created by section 875 and when does it come into existence? The answer appears to be given in the initial sentence: "(a) Where a *money judgment has been rendered jointly* against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided." Further, subdivision (c) thereof provides, "Such right of contribution *may be enforced only after* one tortfeasor *has,* by payment, *discharged the joint judgment or has paid more* than his pro-rata share thereof." (Emphasis added.) ▮ When called upon to determine when the cause of action for contribution arises, i.e., whether at the time of the accident involved or at some later date, our Supreme Court in *Augustus* v. *Bean, supra,* 56 Cal.2d 270, page 272, stated: "The statutory system for contribution does not concern the relationship of tortfeasors to the one injured but deals with the relationship of tortfeasors to each other *when, after entry of judgment, one of them discharges the common liability.*" (Emphasis added.) (See also *Hudson* v. *Hutchason,* 171 Cal.App.2d Supp. 869, 871 [340 P.2d 756].)

In *American Can Co.* v. *City & County of San Francisco, supra,* 202 Cal.App.2d 520, page 523, after discussing the distinctions between contribution and indemnity as above noted, the court stated: "In the case at bar, appellants are clearly not seeking contribution pursuant to Code of Civil Procedure, section 875, *since no money judgment has been rendered jointly against appellants and respondent.*" (Emphasis added.)

We therefore conclude that under the express language of the statutes and in accordance with the decisions interpreting them, appellants had no standing in the trial court entitling them to object to the dismissal granted their codefendants. Therefore, we need not consider the merits of the dismissal itself.

Even if the language of the statutes were less clear, the requirements of orderly judicial proceedings would compel this conclusion. ▮ Absent some special relationship between the parties, other than their potential liability as joint tortfeasors, a plaintiff should be able to control his case by proceeding against the party or parties whom he feels to be most clearly liable. Under such circumstances, an alleged wrong-

doer should not be permitted to assert the right, even subject to the restrictions of sections 442 and 1048 of the Code of Civil Procedure, to bring in other persons whom he feels might in some fashion have contributed to the consequences of his own wrongful conduct where such right is based, not upon the theory that the presence of such other persons would defeat the plaintiff's claim, but only that it would lighten the wrongdoer's burden. The facts of the instant case present a good illustration of the undesirability of declaring such a right.

To say that it is "inequitable" for one of two or more persons, whose wrongdoing and consequent liability have been judicially determined, to be forced to satisfy the entire judgment, or a disproportionate share thereof, is not to the point. It was this consideration which led to the enactment of the new legislation in its present form. The "equities" thus considered are those of the wrongdoers among themselves and at all times are subject to the greater "equity" existing in favor of the innocent injured party. He may still satisfy his judgment in full against any tortfeasor judgment debtor, (Code Civ. Proc., § 875, subd. (g)) or settle his case with one or more of a number of tortfeasors claimed to be liable for the same tort prior to verdict or judgment and thereby deprive the remaining tortfeasors of any right to contribution (Code Civ. Proc., § 877, subd. (b)).

The rights of the innocent injured party always do, and always should, remain paramount. To require such party to be subjected to all the costs and inconvenience of a trial extended by the introduction of additional parties who might also be liable is completely to lose sight of the basic reason the action is allowed and brought.

It is true, of course, that in the instant case the third parties were already in the cause as the result of the pleadings of the plaintiffs in one of the consolidated cases. But in neither of the cases do the plaintiffs object to the dismissal, yet the appellants, whose liability has been determined, have subjected these innocent parties to the costs of an appeal and insist that they should be subjected to the additional costs of a new trial in order that appellants possibly may be able to shift some of their responsibilities.

 Whatever merit, if any, there might be in a suggestion that the Legislature should consider the desirability of devising some method by which wrongdoers might litigate their respective rights, it is clear that it has not as yet done so. The statute providing for contribution among joint tortfeasor

judgment debtors carries with it no right unnecessarily to inject such issues into the plaintiff's case against his will. The case of *Towers* v. *Perez,* 199 Cal.App.2d 701, 702 [19 Cal.Rptr. 135], does not assist appellants herein, for in that case verdict had been returned against all codefendants, and the judgment subsequently entered had been satisfied by one of them. The appeal there sought a reversal of the judgment notwithstanding the verdict granted certain of the codefendants and the appeal did not in any way involve the injured plaintiff or place any additional burdens upon him.

Without debating the propriety of certain of the language adopted by the court in *City of Sacramento* v. *Superior Court,* 205 Cal.App.2d 398, 403 [23 Cal.Rptr. 43], it is at once apparent that the situation presented therein, as in *Witt* v. *Jackson,* 57 Cal.2d 57, 73 [17 Cal.Rptr. 369, 366 P.2d 641], is entirely distinguishable from the one before us. The issue in the *City of Sacramento, supra,* case was whether or not the employer of the plaintiff employee could be joined by the named defendants as a potential joint tortfeasor. In that situation the presence of the additional party would not materially complicate or delay the trial and the association between employer and employee is a peculiar, and, generally, a closely knit, relationship. Secondly, and more importantly, the employer already has been required to pay certain sums to the plaintiff under the provisions of the Workmen's Compensation Act, although not necessarily as a tortfeasor. Where the employer's actual negligence proximately contributed to his employee's injury, but he is not joined in the employee's action against a third party, the peculiar situation could occur where either the employee would be entitled to recover twice for the same injury or one joint tortfeasor would be permitted to recoup monies actually paid. Such considerations obviously play no part in the typical case such as that presented by this appeal.

The Luce appellants also make the secondary argument that when the trial judge directed the verdict in favor of the codefendants, he also stated that his reason for so doing was that he had concluded as a matter of law that whatever might be their relationship to Mrs. Luce, their actions, negligent or not, were not the proximate cause of the Thornton accident wherein they had been named as defendants. They argue that this deprived them of their defense in both cases, for it was their theory that if the transmission had functioned

properly, the left turn would have been completed without incident.

We do not see how the jury could have construed the statement in the manner suggested by appellants. The court did not say that the transmission did not fail during the turn, or even that the codefendants had not been negligent in causing this defective condition. He merely stated that such negligence, if any, was not the proximate cause of the Holowaty truck's striking the Thornton truck. It was left to the jury to determine whether or not the transmission failed, whether or not any such failure resulted in Mrs. Luce's inability to complete her turn in time to avoid causing the two collisions, and whether, regardless of any such failure, Mrs. Luce was nonetheless negligent because of her prior knowledge of the defective condition.

As heretofore indicated, we are not called upon to determine whether the conclusion of the court in this regard was correct, and we express no opinion thereon. We do hold, however, that in view of Mrs. Luce's own testimony (a) regarding the prior failures of her car under acceleration, (b) that such condition was growing progressively worse, (c) that even as she was returning to the garage it continued to grow worse, and (d) that she was conscious of the defective condition even as she waited to make her left turn, no error was committed which was sufficiently prejudicial to alter the verdict of the jury.

 The final assignment of error made in both appeals is the assertion that appellants were so prejudiced by the giving of BAJI Instruction No. 104-F* that a reversal is

---

*BAJI No. 104-F as given:

"If you find that any plaintiff sustained an injury as the proximate result of the acts or omissions of the defendants, or any of them, and that each of the defendants was negligent, then you must find against each of the defendants on the issues of negligence and proximate cause unless you find from a preponderance of the evidence that the negligence of one or more defendants did not operate as a proximate cause of the injury or part thereof. Under these circumstances, the burden rests upon each defendant to prove that his or her negligence was not a proximate cause of the injury." This instruction is designed to be used in such cases as *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91] where a plaintiff can prove the negligence of two or more independent defendants but is unable, from the nature of the case, to identify which defendant's acts actually injured him. In the *Summers* case two parties shot in plaintiff's direction and buckshot lodged in his eye and lip. It could not be traced to either gun. The court felt that under such circumstances the burden of proof should shift rather than the plaintiff failing to recover through inability to prove which, of only one possible defendant, proximately caused his injury, i.e., the defendants' acts did not "concur" in causing the injury although they "concurred" in point of

required. Clearly, the giving of this instruction was error, for the conduct of all parties was known to the several plaintiffs as was the identity of the persons whose conduct immediately inflicted the injuries. However, appellants concede that the court gave "lengthy and detailed instructions on proximate, sole, concurrent and intervening cause" and "an unusually elaborate apparatus of instruction." Even prior to the closing arguments, the court stated to the jury in reference to the time allocated to the parties for argument: ."The reason for that allocation is that the plaintiff in each case has the burden of proof of proving the elements of negligence, *proximate cause,* and the elements of damage, and therefore, because that burden rests upon the plaintiffs, the plaintiffs are given that particular right." (Emphasis added.)

Among other instructions given on the burden of proof was the following: "In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon that issue must be against the party who had the burden of proving it; and in this action *each plaintiff has the burden of proving the following issues*: *Negligence, proximate cause,* the nature, extent and duration of the injuries or damage; and each defendant has the burden of proving contributory negligence of the plaintiff or plaintiffs asserting a claim or claims against him, and that such negligence, if any, was a proximate cause of the injury or damage of which that plaintiff complains." (Emphasis added.)

In concluding its instructions, the court stated: "If you find that you are perplexed in the course of any of these determinations on proximate cause, or any other issue that is presented here by the instructions, you, of course, will be privileged through your foreman to convey that fact to the bailiff and be returned to the courtroom where, in the presence of counsel and with their assistance, I perhaps can give you further instructions or illustrations that will help you if you need them." The record does not disclose that any clarification was sought by the jury, but does indicate that they were able to resolve both cases, including the damages sustained by the several seriously injured plaintiffs, by a unanimous

time. The present case involves only the usual problems of joint tortfeasors whose conduct concurred in causing the injury and there appears no necessity to shift the burden of proof.

verdict returned in less than five hours of deliberations. Such result indicates the jury was not confused. (*Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368, 382 [24 Cal.Rptr. 209, 374 P.2d 185].)

Upon examining the entire cause, including the evidence, as we are required to do (Cal. Const., art. VI, § 4½), we have concluded that any error in the giving of BAJI Instruction No. 104-F resulted in no miscarriage of justice. In line with the policy of this court to reduce the length of opinions by eliminating extended factual discussions which would be of little or no precedential value, it is sufficient to state that the evidence proving the negligence of all appellants and the proximate concurrence of such negligence in causing the damages inflicted in the *Thornton* case is so compelling that any different result upon a retrial would be entirely improbable. (*Chance* v. *Lawry's Inc.*, *supra*, at p. 381; *Sena* v. *Turner*, 195 Cal.App.2d 487, 496 [15 Cal.Rptr. 857]; *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, 313 [3 Cal.Rptr. 718].)

The judgments in the consolidated cases are affirmed.

Fox, P. J., and Ashburn, J., concurred.

The petitions for a rehearing were denied December 11, 1962, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1963. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.